IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES CURTIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Case No.  03-681-MJR-PMF |
| ) | |
| K. ROBINSON, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Before the Court is defendant Robinson's motion for summary judgment (Doc. No. 13). Plaintiff James Curtis filed this civil rights action pursuant to 42 U.S.C. § 1983, challenging the conditions he experienced while confined at Pinckneyville Correctional Center between March and August, 2003. Following threshold review, Curtis' retaliation claim remains (Doc. Nos. 1, 7). The motion is opposed (Doc. No. 16).

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To determine whether there is a genuine issue of material fact, courts construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The material facts are not in dispute. Plaintiff filed grievances accusing defendant Robinson of harassment against defendant Robinson on March 30 and 31, 2003. Those grievances accused defendant Robinson of harassment. On April 2, 2003, plaintiff left the Pinckneyville facilty on writ. He returned on May 8, 2003.

On May 10, 2003, plaintiff was assigned to live in cell R-4-B75. He moved to cell R-4-A28 on May 18, 2003.

On May 18, 2003, correctional officer Jackson issued a disciplinary report accusing plaintiff of violating prison rules 304 and 404. Plaintiff was taken to the segregation unit the same day, and some of his personal property was confiscated. Plaintiff prepared a grievance. As a result of Jackson's disciplinary report, plaintiff's grade status was reduced for one month and he spent a month in the prison's segregation unit. .

On May 20, plaintiff was moved to cell R5-seg. On that date, and again on July 7, 2003, defendant Robinson issued disciplinary reports accusing plaintiff of violating prison rules 403 and 404. As a result of Robinson's reports, plaintiff's grade status was reduced for 2 months, he spent two additional months in the prison's segregation unit, and he lost one month of good conduct credits.

On May 26, 2003, correctional officer Hudson issued a disciplinary report accusing plaintiff of violating prison rules 304 and 403. As a result of Hudson's report, plaintiff's grade status was reduced for two months and he spent two additional months in the prison's segregation unit.

Plaintiff prepared grievances on June 3, 5, 11, 17, 23, 27, 30 and July 7, 2003.

On July 8, 2003, correctional officer Lane issued a disciplinary report accusing plaintiff of violating prison rules 403 and 404. As a result of Lane's report, plaintiff's grade status was reduced for 2 months, he spent two additional months in the prison's segregation unit, and he lost two months of good conduct credits.

On July 11 and 13, 2003, correctional officer Hagene issued disciplinary reports accusing plaintiff of violating prison rules 403. As a result of Hagene's reports, plaintiff's grade status was reduced , he spent additional time in the prison's segregation unit, and he lost 3 months of good conduct credits.

Plaintiff prepared another grievance on July 14, 2003.

On July 15, 2003, correctional officer Johnson issued disciplinary reports accusing plaintiff of violating prison rules 202 and 402. As a result of Johnson's report, plaintiff's grade status was reduced for 1 month and he spent an additional month in the prison's segregation unit.

Also on July 15, 2003, correctional officer Whitehead issued disciplinary reports accusing plaintiff of violating prison rules 210, 304, and 403. As a result of Whitehead's report, plaintiff's grade status was reduced for 1 month and he spent an additional month in the prison's segregation unit. Plaintiff was taken to the segregation unit that day.

On July 16, 2003, correctional officer Homoya issued disciplinary reports accusing plaintiff of violating prison rules 210, 304, and 403. As a result of Homoya's report, plaintiff's grade status was reduced for 1 month, he spent an additional month in the prison's segregation unit, and he lost one month of good conduct credits.

On July 20, 2003, correctional officer Sanders issued a disciplinary report accusing plaintiff of violating prison rule 403. As a result of Sanders' report, plaintiff's grade status was reduced for 1 month and he spent another month in the prison's segregation unit.

Plaintiff prepared two grievances on July 21, and another grievance on July 30, 2003.

On August 1, 2003, a correctional officer issued a disciplinary report accusing plaintiff of violating prison rules 202, 210, and 402. As a result of that report, plaintiff's grade status was reduced for 3 months, he spent 3 additional months in the prison's segregation unit, he was barred from commissary for 3 months, and he lost yard privileges for 2 months.

On August 6, 2003, plaintiff was transferred to Menard Correctional Center. He did not receive responses to many of the grievances he filed prior to his transfer. Some of the unanswered grievances described retaliatory disciplinary reports.

On August 8, 2003, plaintiff prepared a lengthy grievance which included allegations of retaliation at Pinckneyville. The ARB received plaintiff's grievance on August 11, 2003.

At some point, plaintiff appealed the warden's decision regarding his June 4, 2003, grievance to the ARB. On October 21, 2003, the ARB returned the grievance, finding that it was untimely.

On December 10, 2003, the ARB also returned plaintiff's August 8, 2003, grievance with a note indicating that his concerns would not be addressed because he failed to provide a grievance officer's report and/or counselor's response.

Jackie D. Miller acts as chairperson for the Administrative Review Board (ARB). At some point, she searched records maintained by the ARB and did not locate any grievance from plaintiff addressing his retaliation claim against defendant Robinson.

### 1.   Retaliation

Defendant Robinson argues that plaintiff's allegations that he declared a hunger strike do not indicate that he was exercising a constitutional right. Because this argument is based on the allegations rather than evidence, it is evaluated pursuant to Rule 12(b)(6).

The first step in evaluating the sufficiency of a claim for relief is to give pro se allegations a liberal interpretation, accept as true all well-pleaded facts, and draw all inferences in favor of the plaintiff. If, so viewed, the allegations put Robinson on notice that plaintiff is asserting a retaliation claim and his allegations do not rule out the possibility that Robinson violated the applicable legal standard, the pleading cannot be dismissed. That is, dismissal is proper only if it is "beyond doubt" that plaintiff could prove no set facts consistent with his complaint that would entitle him to relief. *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998).

Plaintiff has stated enough facts to place defendant on notice that he is asserting a retaliation

claim based on his use of the grievance process. In fact, Robinson was advised of this interpretation when Judge Reagan ordered a response (Doc. No. 7). Because prisoners have a constitutional right to petition for redress of their grievances, and because plaintiff's allegations do not rule out the possibility that his grievances were a factor motivating the retaliatory actions attributed to defendant Robinson, plaintiff's retaliation claim should not be dismissed.

### 2. Exhaustion of Administrative Remedies

Defendant Robinson seeks dismissal for failure to exhaust administrative remedies. An inmate complaining about prison conditions must exhaust administrative remedies before filing suit. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion requires compliance with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002). The Illinois Department of Corrections has a grievance procedure that normally begins with an informal effort to resolve the inmate's concern and ends with a decision by the ARB. According to the affidavit submitted by defendant Robinson, inmates may grieve issues regarding their confinement at a former facility directly to the ARB, without first submitting their concerns to a counselor or grievance officer. The ARB retains the original copy of it's reports and final decisions. Because prison officials cannot exploit the requirement through endless delay, inmates can point to a failure to respond to a grievance to show that the administrative process is not available. *See Lewis v. Washington*, 300 F.3d 829, 835 (7th Cir. 2002).

Viewing the evidence in plaintiff's favor, plaintiff can prove that he complied with the applicable administrative remedy procedure in two ways: by filing grievances at Pinckneyville Correctional Center and by sending his August 8, 2003, grievance directly to the ARB following his transfer to Menard. Because grievance officials at Pinckneyville did not respond to some of plaintiff's grievances and because the ARB returned plaintiff's August 8, 2003, grievance without

considering his concerns regarding the conditions at a former facility, plaintiff has presented facts demonstrating that the administrative remedy process was not available. Robinson is not entitled to judgment of dismissal based on this affirmative defense.

### 3. Heck v. Humphrey

Defendant Robinson also argues that a portion of plaintiff's retaliation claim is barred by a line of cases beginning with *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Under those cases, a prisoner may not bring a § 1983 suit that, if successful, would undermine a still-valid disciplinary conviction. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Because *Heck* and *Edwards* limit challenges to the fact or duration of a prisoner's sentence, the argument is limited to disciplinary actions resulting in a deprivation of good time credits (July 7, 8, 11, and 16, 2003). *See DeWalt v. Carter*, 224 F.3d 607, 617-18 (7th Cir. 2000), *Johnson v. Litscher*, 260 F.3d 826, 830-31 (7th Cir. 2001).

If successful, plaintiff's retaliation claim based on false disciplinary reports would imply the invalidity of a handful of disciplinary decisions that resulted in a loss of good conduct credits; namely, those resolving disciplinary reports issued on July 7, 8, 11, and 16, 2003. As there is no indication that those disciplinary decisions have been overturned, plaintiff's retaliation claim should be limited to the incident reports written on May 18, 20, 26; July 13, 15, 20; and August 1, 2003.

### 4. Conclusion

IT IS RECOMMENDED that defendant Robinson's motion for summary judgment (Doc. No. 13) be GRANTED in part and DENIED in part. Plaintiff's retaliation claim should be limited to the incident reports written on May 18, 20, 26; July 13, 15, 20; and August 1, 2003.

SUBMITTED:  February 7, 2007  .

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**